**UNITED STATES v. CERTAIN LANDS IN BUTLER COUNTY, PA., et al.**

No. 9953.

United States Court of Appeals Third Circuit.

Argued March 23, 1950.

Decided May 17, 1950.

Harry F. Stambaugh, Pittsburgh, Pa. (T. McKeen Chidsey, Attorney General, on the brief), for appellant.

Fred W. Smith, Washington, D. C. (A. Devitt Vanech, Assistant Attorney General, Edward C. Boyle, United States Attorney, Pittsburgh, Pa., Elliott W. Finkel, Special Assistant to the United States Attorney, Pittsburgh, Pa., Roger P. Marquis, Attorneys, Department of Justice, Washington, D. C., on the brief), for appellee.

Before BIGGS, Chief Judge, and MARIS and McLAUGHLIN, Circuit Judges.

BIGGS, Chief Judge.

In 1940 the General State Authority (the Authority), a public corporation of the Commonwealth of Pennsylvania, built an establishment in Butler County, Pennsylvania, known as the Western Pennsylvania Tubercular Sanitoroum (the Hospital). The United States contributed about $386,750 toward the cost of the construction and furnishing of the Hospital by means of the Work Projects Administration. The Authority leased the Hospital to the Department of Property and Supplies of the Commonwealth of Pennsylvania (the Department) for a term beginning November 1, 1939 and ending June 1, 1968. The lease provided that the Hospital might be subleased.

The Hospital was vacant until occupied by the United States in 1942. On October 23, 1942 a "Sublease and Agreement" was entered into by the Department "acting for and on behalf of the Commonwealth of Pennsylvania, as Sublessor", the United States of America as sublessee, and the Authority. By the sublease and agree-

ment the United States acquired the Hospital for a term beginning with the date of entry and ending June 30, 1943. The sublease and agreement provided for renewal by mutual consent from year to year on six months' notice.[1] It provided further that $2,699,935 less certain deductions, not pertinent here, " * * * shall be the amount of the award for all damages or compensation" by reason of the taking of a fee simple title by the United States in any judicial proceeding.[2] The sublease and agreement was signed by the Secretary of Property and Supplies, on behalf of the "Department of Property and Supplies", described in the document itself as "a body corporate and politic constituting a public corporation and governmental instrumentality, organized under the laws of the Commonwealth of Pennsylvania * * * as owner." The document was signed also by an official of the Authority and approved in writing by the Attorney General of the Commonwealth and the Governor of the Commonwealth.

The United States went into possession, operated the establishment as Deshon Hospital and made improvements and additions thereto at a cost of about $4,000,000.00. It is claimed by the United States that these improvements were made in reliance on the condemnation provisions of the "Sublease and Agreement". The lease was renewed from year to year, the final renewal being for a term ending June 30, 1946.

Late in December 1945 the Commonwealth of Pennsylvania was informed by a letter written by Colonel E. G. Gesler, Engineers Corps, U. S. A., that the United States would not require the Hospital after June 30, 1946. Shortly thereafter General Omar N. Bradley, Administrator of Veterans Affairs, informed Governor Edward Martin of Pennsylvania, that the War Department proposed to vacate the

1. Paragraph 3 of the "Sublease and Agreement" provided:

   "This sublease may, by mutual agreement between the Department and the Government, be renewed from year to year at a rental of One Hundred Sixty Thousand Dollars ($160,000.00), provided notice be given in writing to the Department at least six (6) months before this sublease or any renewal thereof, would otherwise expire; provided that no renewal thereof shall extend the period of occupancy of the premises beyond the 31st day of May, 1968."

2. Paragraph 6 of the "Sublease and Agreement" provided:

   "The Department and the Authority agree that in the event the Government at any time during the term of this sublease, or any renewal thereof, determines that a leasehold interest, or fee simple title, in and to said land and premises, with their appurtenances, is to be acquired by any judicial proceedings, notwithstanding the prior execution of this sublease, in order to acquire a satisfactory leasehold interest or title, or to expedite such acquisition or for any other reason, the Department and the Authority agree that the sum of One Hundred Sixty Thousand Dollars ($160,000.00) per annum, shall be the amount of the award to be decreed for all damages or compensation by reason of the taking of a lease-hold interest and that the sum of Two Million Six Hundred Ninety-nine Thousand Eight Hundred Thirty-five Dollars ($2,699,835.00) less that portion of the rent theretofore paid under this sublease which is in excess of property and boiler insurance premiums and administrative expenses in the amount of Three Thousand Eight Hundred Fifty-nine Dollars ($3,859.00) per annum, and interest computed at the rate of four (4) per cent. per annum on Two Million Six Hundred Ninety-nine Thousand Eight Hundred thirty-five Dollars ($2,699,835.00) amortized on annual basis beginning the 23rd day of October 1942, shall be the amount of the award to be decreed for all damages and compensation by reason of the taking of fee simple title to said property, and that this sublease and agreement shall constitute a stipulation which may be filed in such proceedings and shall be final and conclusive evidence of the true value of the estate taken and of the proper award to be made in such proceedings.

   In the event the Government acquires leasehold interest in said land and premises by such judicial proceedings, the annual rental of One Hundred Sixty Thousand Dollars ($160,000.00) per annum shall be reduced to One Dollar ($1.00) per year on compliance with and fulfillment of the terms and conditions of Paragraph Five of this sublease."

Hospital not later than June 30, 1946. In view of this information Governor Martin had studies made by state employees as to possible future uses of the Hospital by the State of Pennsylvania. On February 15, 1946 General Bradley wrote to Governor Martin stating that urgent requests had been received from citizens of Pennsylvania asking that the Hospital be acquired by the Veterans Administration. The letter also asked for terms of "purchase" if the Veterans Administration should find the Hospital suitable for conversion to a veterans' hospital. On March 13, 1946 Governor Martin quoted to General Bradley a price of $4,000,000. On June 26, 1946, four days before the lease ran out, the United States filed its petition in the court below to condemn a fee simple title to the Hospital for the United States. Hearing was had. The court below filed findings of fact, conclusions of law, and a memorandum opinion,[3] and entered an order awarding the Commonwealth of Pennsylvania $2,512,297.39 as just compensation. It will be noted that the award is based on the sublease and agreement, in which, as we have said, it was stipulated by the parties that the amount stated should be deemed to be "damages and compensation" if a fee simple title was condemned in a legal proceeding. No other pertinent evidence as to the value of the Hospital was introduced at the hearing.

█ It is conceded, in effect, by the parties that if the sublease and agreement is valid and binding upon the parties the award must stand. It is argued by the Commonwealth that the Authority and the Department acting through the persons who signed that document were not au-

thorized to sell real property, that, therefore, their acts were *ultra vires* and the provisions of paragraph 6[4] do not bind the Commonwealth. See Section 514 of the Administrative Code of April 9, 1929, P.L. 177, and supplements thereto, 71 P.S.Pa. § 194.[5] We will assume *arguendo* that real property belonging to the Commonwealth cannot be sold without the express approval of the Legislature of Pennsylvania. The agreement in dispute is not an agreement to sell. The agreement sets an amount of *"damages and compensation"*[6] to be awarded the Commonwealth in case of *"any judicial proceedings"* by the United States to acquire fee simple title. Condemnation proceedings involve an involuntary taking quite unlike a sale. The cited statute can not limit the power of the United States to condemn property, nor does it serve to limit the power of the executive officials of the Commonwealth to make agreements as to compensation in case of condemnation. The Pennsylvania statute relied on by the Commonwealth does not range so far.

█ It is also contended by the Commonwealth that the United States had given up any rights which it had under the sublease and agreement prior to the filing of the condemnation proceedings on June 26, 1946. The court below weighed the evidence carefully on this point. No statements made in behalf of the United States which indicated that the United States would vacate the premises went so far as to give up rights existing under the agreement. The Commonwealth's contention is without merit.

The judgment of the court below will be affirmed.

---

3. Not reported for publication.

4. See note 2 supra.

5. The statute provides in pertinent part: "Except as otherwise in this act expressly provided, a department, board, or commission, shall not sell or exchange any real estate belonging to the Commonwealth, or grant any easement, right of way, or other interest over or in such real estate, without specific authority from the General Assembly so to do * * * * ."

6. Emphasis added throughout this opinion.